Our last case of the year is 12-484, University of Texas Southwestern Medical Center v. Nassar. Mr. Josepher. Good morning, and may it please the Court. This Court's decision in Gross does most of the work in this case, and the plain language of the 1991 amendments to Title VII do the rest. Under Gross, Nassar must prove that retaliation was the but-for cause of the challenged employment action unless Congress has specifically relieved him of that burden by authorizing a mixed votive claim. In the 1991 amendments, however, Congress authorized mixed votive treatment only for Title VII claims that challenged discrimination based on membership in a protected class, not for retaliation claims. And for that reason, a Title VII retaliation plan must prove but-for causation. In the age discrimination context, there wouldn't be a difference between the discrimination claim itself and the retaliation. They'd both be governed by the same standard, isn't that right, in the age discrimination area, the but-for? Gannon, or am I wrong about that? Well, the Age Act does not permit any mixed votive claim. Yes. So for this purpose in the Age Act, everything is but-for, that's correct. But your argument is that in Title VII, where it's very clear what the standard Congress wants to have for the discrimination claim, you're going to have a different standard for retaliation. So in these statutes, I thought these two traveled together. Whatever the standard is for discrimination, it's the same for retaliation. Well, to some extent within Title VII, that is the question in the case. But what we have here is an amendment within Title VII. In the provision of Title VII, remember, it set forth discrimination based on class and discrimination based on retaliation as separate types of discrimination, and this provision treats them differently. It specifically limits us. Kagan. Kagan. Well, I guess the question, Mr. Josepher, is, is there any other discrimination statute in which one can say that there's a different standard for proven retaliation than there is for proven substantive discrimination, because as I sort of survey the universe, it seems as though whatever the standard is, the standard is the same for both, and there's no statute in which the two have been divorced. Am I wrong about that? Well, I mean, the reason I guess that's the question, I would agree in the sense that what we're talking about is but-for versus mixed motive, right? It's but-for everywhere except for within the meaning of this one amendment. Congress clearly intended to make an exception here to the normal but-for. Kagan. Is there any other statute in which we have a different standard of causation for a retaliation claim than we do for a substantive discrimination claim? No, because it's but-for everywhere except for this one amendment. Well, is there – I mean, it's but-for everywhere. Is there even any time at which whatever the standard that applied, you know, pre-Gross, is there ever a moment and is there ever a statute in the history of anti-discrimination laws where there has been a divorce, a different standard for retaliation than for substantive discrimination? I can't point to anything specific because what we had, right, was there's this – I can't point to anything specific on that up until the statute. The whole point of Gross, right, is that the statute carves out a narrow exception from but-for and you figure out how to do this. All I'm saying is, you know, Gross was a couple of years ago. It said but-for covers the ADEA and outside Title VII. You know, we've had a lot of discrimination statutes since 1964. We've had a lot of different standards applying to those discrimination statutes since 1964. And you're coming in here and asking for the first time in all those many decades that we should divorce the retaliation claim from the substantive discrimination claim and make them follow two different standards. Is that correct? I mean, yes and no, in the sense that if we're talking about but-for versus mixed, right, yes, that's a creature of this specific statute we're talking about. If we're talking about other aspects of retaliation and other types of discrimination, there are differences in the statute. Alito, did this Court ever hold that the Price-Waterhouse framework applied to retaliation claims? No. And the – I mean, the backdrop here, which is the whole point of Gross, right, is that as of Price-Waterhouse, we had, you know, a somewhat confusing and murky alignment of opinions that direct – and I think everyone agrees with this – interpreted only section 2A, the discrimination based on class provision. Then, two years later, Congress came in with this amendment to specifically identify what it wanted to do about mixed motive. And Gross says that except for when Congress has specifically called for this mixed motive treatment, it's but-for, as though it's the holding of Gross. And when we look to this provision, I mean, there are different ways of looking at it, but one would be to say that I'm not aware of any statute that has a specific retaliation provision where this Court has construed discrimination based on class generally to encompass retaliation, because that would make the retaliation provision here in 3A absolutely surplusage. It would make the other statutory cross-references to 3A surplusage, because you'd be taking the specific retaliation provision within Title VII and subsuming it within a general treatment of discrimination based on class, race, and so forth. And the basic structure of these provisions of Title VII is that when Congress wants to refer to all Title VII discrimination claims, it will refer as it is in substance in Section 2N to a claim of employment discrimination, generally. It will refer, as it did also in Section 2, to an unlawful employment practice, which would cover the waterfront. But when it wants to cover a specific subset, it refers to retaliation, as spelled out in 3A, or to discrimination based on membership in one of the five protective classes. Sotomayor, I'm sorry, I somehow lost what you were saying. Isn't the law, and our presumption in Jackson, that when we talk about discrimination on the basis of race, that it includes retaliation generally? Well, what Jackson says, of course, is then is that Title VII is vastly different. And the distinction it's drawing. Well, different because it was the beginning of this sort of endeavor on creating a statute. Well, the distinction that Jackson draws, and also that Gomez-Perez draws expressly in distinguishing this type of situation, is if you have a broad general prohibition on discrimination or discrimination based on race, without more, without more specificity, the Court will presume that that would include retaliation. But when you have a statute like this one that specifically singles out, specifically describes in detail the different types of prohibited discrimination, including specifically retaliation, this Court has never overridden that specific statutory text to put one of those specifically broken-out types of discrimination into another more general one, such as discrimination based on race, which is why. I'm not sure what difference it makes. Well, because otherwise you're taking the result. Other than in the outcome you want here. Well, as a matter of – well, I mean, as a matter of statutory interpretation, right, which then drives the outcome, the difference is that if you treat a statute with a specific retaliation reference or provision as being subsumed within a more general one on discrimination based on race, for example, you're treating a specific retaliation reference to be surplusage, to have no effect and not need to be there, and you're treating the other statutory cross-references to it as also being surplusage, which is why, when Congress does speak more directly, this Court's never overridden – never said it will take a specific retaliation provision and treat it like it's not there and toss it in based on race, for example. And that's why – I mean, that's why those general cases they cite, those are our cases, because Jackson specifically says that Title VII is vastly different for this very reason. Kagan. Well, Mr. Joseph, I mean, Title VII is written before any of these cases come along. So Title VII is written and it says we have an anti – a substantive anti-discrimination provision, and we have a retaliation provision. And then the Court starts issuing cases, and it says, by the way, you actually don't need both. One will do the job for you because one includes the other. And that's in Sullivan, and that's in Jackson, and that's in Gomez-Perez, and I'm sure I'm missing a few. Three, four, five times the Court says this. And so then in 1991, Congress comes back and it says we want to make some amendments. What do we have to do? Do we have to amend both the anti-discrimination – the substantive provision and the retaliation provision? Well, no. We've been told five times that as long as we say one, it means both. And so that's what Congress does in 1991. There are a couple – if you just look at 91, there are a few reasons that we know from the 91 that doesn't work. One is at almost the same time in 1991, Congress enacted the Americans with Disabilities Act, where it again separately broke out discrimination based on disability and retaliation, treated them separately. So Congress hadn't forgotten that it was treating them differently. Also, in this very provision, the Civil Rights Act of 1991, Congress specifically cross-referenced both the part of Title VII that contains the general provision and the part of VII, Section 3, that contains retaliation. So it's specifically dealing with these separate provisions, acknowledging that it has in fact, presumptively at least, has read them and understands that they do draw the distinction. I mean, I think we presume that anyhow, but we know it from the actual statutory text of 91. Of the 91 Act. And then the overall purpose of the 91 Act was to overrule decisions of this Court that Congress thought had not interpreted Title VII properly. And am I right that what they put about a motivating factor, a motivating factor, that is more plaintiff-friendly than the standard that the Court declared in Price Waterhouse? For those cases that the motivating factor provision governs, it's more plaintiff-friendly, yes. So it's really odd to think that in wanting to go beyond what we did in Price Waterhouse, the Court meant to set up an entirely different standard for retaliation. Well, that was basically the same argument that this Court rejected in Gross, in that Gross involved another absolutely identical statutory provision that was lifted, in fact, deliberately lifted verbatim from Title VII to be put into the Age Act. And what this Court held, basically, was that, look, whatever Congress's overall purpose or general purpose behind the 1991 Act as a whole, right, what we have to do is look at what it actually did, what lines it actually drew in any given situation. And here. And even looking, let's look at what they actually did. If we look at this M section, it says, except as otherwise provided in this subchapter. I take it that would include retaliation as well as in the subchapter. Yes. And unlawful employment practice is established. And then when we go over to the retaliation provision, it says, it shall be an unlawful employment practice. So why doesn't that suggest that the unemployment practice under the retaliation provision is the same as unemployment practice under the unlawful employment practice? Under Title VII, there are basically three different ways to establish an unlawful employment practice. One is the general provision for discrimination because of membership in a class. One is because of retaliation. And this is another one. So this defines basically a third way of establishing whether an employment practice is unlawful. And what it says is that any employment practice that is motivated by one of the five listed factors is an unlawful employment practice.  So the question is, do the five motivations, do they or do they not include retaliation? We agree with the government that that's what it all comes down to. And as to that question, I mean, there was discussion earlier today about, you know, the weight of authority. I mean, the nine courts of appeals have squarely addressed this. They've all agreed with us because Title VII's text and structure are so clear. The Title VII, and that was the basis for the distinction of Title VII and Gomez-Perez or, excuse me, Gomez-Perez distinguished the identical provisions of the Age Act, made the same point. Jackson, again, said Title VII is vastly different for this reason. You just have to understand. Scalia, I can't understand you very well. Maybe you have to lift up your mic or maybe you have to speak more slowly, but I'm having an awful time following you. I apologize, Your Honor. I was just saying the basic point is that, as Jackson and Gomez-Perez indicated, the specific controls the general. And when Congress breaks out retaliation, that's a different subset of discrimination that's not then subsumed within discrimination based on class. Otherwise, you're reading out the retaliation provisions and making them surplusage, which is why all of the many courts of appeals that have looked at this, you know, have unanimously agreed with us. Ginsburg, the EEOC didn't. Well, this Court has already disagreed with the EEOC. The EEOC has two footnotes in informal guidance that say that under the 1991 amendments, retaliation claims can be proven under a mixed motive theory for any of the statutes that the EEOC administers, which is clearly contrary to Gross. And it's that informal guidance does not contain — what it contains basically is, you know, policy analysis of why they'd like that to be a result, but no textual analysis whatsoever. There's — so the guidance, one, doesn't get deference because it's contrary to the plain text of the statute, as numerous courts of appeals have recognized. And, two, in terms of its power to persuade, I mean, it — this Court's already rejected it, and even as applied to Title VII retaliation, you know, the courts of appeals have unanimously rejected it as well, because there's just policy there. There's no actual textual analysis. Alito, as of 1991 — well, Gomez-Perez and Jackson came after 1991, right? Yes, the others before. So as of 1991, was there any case, any decision of this Court, other than Sullivan, that could have possibly led Congress to the conclusion that the general prohibition against discrimination included a prohibition of retaliation? I think you're right about the timing of that. And Sullivan was so general that it would — I don't know that the law was a whole lot different in 91 than it had been in 64 on this. Well, but, Mr. Joseph, in CBOSCS, we said that because of Sullivan alone, just because of Sullivan, there was no need for Congress to exclude explicit language about retaliation. In other words, we said Sullivan made the point clear. Now, Justice Alito was right. After that, it goes on. We've done it many more times after 1991. But we've said that Sullivan itself made the point clear that you did not need explicit language about retaliation. Right. But the — which is why the main point is the one I was making earlier, that in 1991 itself, Congress was continuing to distinguish between retaliation and discrimination based on class in provisions of this Act and also in the almost simultaneously enacted Americans with Disabilities Act. Where there is, then, another provision in the Disabilities Act that treats retaliation and discrimination based on disabilities significantly different in terms of the remedies that are available for the two. So even at the same time, Congress has elsewhere also been distinguishing between the two. I mean, here's what you're — this goes back to Justice Ginsburg's question. But here's what you're asking us to accept, Mr. Josepher. Congress comes along in 1991 in a world in which there has — there have never been Congress is trying to codify and make even stronger the Pricewaterhouse decision. Right. They — you know, they say, basically, we like Pricewaterhouse, but it's kind of confused and the Court was kind of fractured. We're going to really put it into place legislatively. They do that. They follow the — essentially the drafting manual that we have given them in Sullivan. And you're saying, well, no, what they really meant was that retaliation would have a different standard, and, indeed, that the retaliation would have the standard that the dissenting justices suggested in Pricewaterhouse, notwithstanding that what Congress was clearly intending to do was codify the majority — the plurality-plus position. Well, I — Prose rejected a fair amount of that reasoning, right? I mean, the point is that Pricewaterhouse — you could say that until Pricewaterhouse, there was no reason to think that there should be mixed motive claims. Right. Now, Congress shortly thereafter came in with the 91 amendments to say, okay, we'll have mixed motive claims in this one category. Gross says that's a relatively narrow category. We're going to assume Congress does not want them anywhere else. Even though, you know, discrimination under the Age Act or under Title VII, you could ask, why should it be different? Well, because Congress decided it would be. Here — Kagan. Well, Gross is talking about outside of Title VII. And — and whatever might be said of Gross outside of Title VII, here, where Congress is specifically trying to make Title VII conform with Pricewaterhouse with the backdrop of our legislative drafting instructions and with the backdrop of never distinguishing between retaliation and anti-discrimination. You know, how do you get to where you want to be? This would be like talk about elephants and mouseholes or talk about the — you know, we can take out all our clichés. The dog that didn't bark. You know, Congress doesn't do things like this without saying something. Well, first off, it did, because in this statute, as in others, it distinguishes between discrimination based on membership in a class and retaliation. When it wants to cover all of it, it uses a more general phrase. When it wants to cover one of them, it says one. Here, it said one. But beyond that, again, in terms of the backdrop, though, I mean, the — the whole point of Gross is that you have — you stick to the plain language of 91 amendments. That's where mixed motive treatment is permitted. And elsewhere, there's a — there's a negative inference elsewhere that is so strong that, as you said, it applies even in other statutes. Well, if that negative inference applies in other statutes, it would sure apply within the same statute that this provision exists in and is amending. Also, there are significant differences between discrimination based on class and retaliation that Congress could — didn't have to, but could certainly reasonably choose to follow. One is that retaliation is — well, excuse me — the primary evil Congress was after here, right, was discrimination based on race, sex, religion, and so forth. Retaliation is an important derivative prophylactic provision to help enforce the primary right, but Congress could reasonably conclude that the significant cons with mixed motive treatment did not justify extending it to the secondary right. Also — Sotomayor, where do you see that anywhere in the legislative history? The only thing you'll find in the legislative history, the only thing you'll find that's specific to this is that Congress was aware of retaliation, including aware of Title VII's retaliation provision, and amended legislation to incorporate that provision when it wanted to. You're not going to find anything else in there. Sotomayor, it calls it the same thing it calls the substantive discrimination charge, and it's an unfair employment practice. I mean, I don't understand how you — where you get to your policy point from the fact that it calls it the same thing on both substantive. Now, my point is just that, as this Court explained, for example, in Burlington Military, the two — there are two or both prohibited types of discrimination generally under a But-For standard, but they are different, which is why we have different labels and different names for the two categories, and Congress could reasonably choose to give greater protection to the primary right, not the secondary one, considering  Sotomayor, it calls it both identical things, an unlawful employment practice. Yes. And textually, but it then describes seven different unlawful employment practices, discrimination based on the five classes and discrimination based on the two types of protected conduct. This provision then applies to the five practices and leaves out the two types of protected conduct, which is why, textually speaking, and there's no contrary legislative history, Congress meant to apply this to some, but not all, types of unlawful conduct, of unlawful — of employment practices. And the reason that that's perfectly rational is three things. First, as I mentioned, this is the secondary of them. Second, it sweeps — by its nature, retaliation sweeps so much broader, well outside of the traditional brick place, that when Congress was thinking about jettisoning traditional burdens of proof and relieving a plaintiff of the traditional burden of proving its own case, it could certainly balk at doing that in a much broader setting. And third, the potential for meritless and abusive suits is particularly pronounced in the retaliation context, because any employee at all can opt into a retaliation claim by making a charge, a relevant charge, knowing that, you know, potentially knowing that, yes, the writing's on the wall, I probably am going to be fired. And if you then flip the burdens, the plaintiff doesn't even have to prove its own claim. The plaintiff can point to the timing of his own complaint, the inevitable employment action that would have happened anyway, and the proximity of them is probably going to get the plaintiff past summary judgment. And when you're then looking at an expensive and unpredictable trial, most defendants will be forced to settle even meritless claims. And the EEOC's own statistics show that, one, retaliation claims have become all the rage. They're the leading type of claims being raised these days. And, two, the EEOC's reasonable cause determinations show that only 5 percent of them have even a reasonable cause to support them, which is not an especially high standard. So when we're talking about a potential massive amount and growing amount of mostly meritless but expensive litigation to defend, it's perfectly reasonable for Congress to decide, well, within the scope of what Pricewaterhouse was exactly dealing with, to get back to Justice Kagan's point, we'll have — we'll allow some expletive treatment there, but that'll be it. Because there are other issues with retaliation that could cause Congress to reasonably do exactly what it so clearly did in the statutory text. Sotomayor But that policy argument just says Jackson's wrong. Gannon No, not at all. Sotomayor It just doesn't make any much sense to me that in 1991, when they were thinking about Pricewaterhouse burdens, that somehow they thought that it should now apply that burden differently to retaliation. Jay It was the same argument was rejected in Gross, right? Because in Gross, you had another absolutely identical provision to the retaliation — to the two Title VII provisions at issue here. And this Court held that, no, what Congress was doing in 1991 was specifically authorizing mixed-motive treatment when it wanted, and otherwise casting what this Court called the strongest possible inference, that there would be no other mixed-motive treatment. Breyer Is this a violation of Title VII? I don't know the answer. Smith works for Jones. Jones's whole job is to supervise Smith and be certain that Smith, a well-known racist, has kept his racism under control. He didn't. Smith — they fired someone. Smith did some terrible thing, got rid of somebody for racist reasons. He tells his boss. His boss knows it. His boss does nothing about it. All right? Is the boss violating Section VII? He had no reason for doing nothing about it. He himself wasn't a racist. It was just his job. But he didn't. Is he violated Section VII? Jay If I understand the hypo right, there's no question that the intermediate supervisor and the employee. Breyer The immediate supervisor does violate it. Jay But for causation, right? So it's just a supervisory liability? Breyer Yes, yes, yes. Okay. So there what we have is somebody is guilty under Section VII, even though that individual did not himself discriminate on the basis of race. It was circumstances where the subordinate discriminated on the basis of race. All right? And yet the — there's no doubt that M applies to that. M applies to that, I imagine, unless you're going to start distinguishing within Title VII. Are you going to say M doesn't apply to that? My question is going to be if M applies to that, then why doesn't it also? Why doesn't M also apply here? Because you see here what you have is it's at one remove. It is the individual who is retaliating, been retaliated against. That individual did not discriminate again on the basis of race, nor did the individual in firing him do it, but the whole thing is based on race. And if sometimes under Section VII, simpliciter, people are guilty, although the race motive, the racial involvement is one level down, why wouldn't you — that perhaps is too complicated a question, and if you only have 5 minutes left, so I will take your answer as being, Judge, you better think this out on your own. No, no, no, I — no, no, I — hopefully I'm keeping up with you. If not, please tell me. It seems to me that there were basically two different parts to that. One is, in terms of your main hypo, your first hypo, I don't know that 2M even comes into play, because it sounds to me like the intermediate supervisor is clearly liable under 2A under a but-for theory, and then you just get into a precarious liability question. I don't think 2M gets into that. I would say you're better off keeping your time. But I was going to say under 2M, though, I think the overriding point here is that if I have two thoughts in my head, a bad one, but then I go ahead and treat the person the same way I would have anyhow, then I've done what under Title VII generally understood I'm supposed to do, which is I treated everyone equally regardless of the bad thought in my head. And at that point, and that's why mixed motive claims really threaten to take the goes into, you know, thought control. Beyond that, I'll take the advice and save my time for rebuttal. Thank you, counsel. Mr. Lawton. Mr. Chief Justice, may it please the Court. It does not make any sense at all for Congress to have created two causation standards under the same statute in 1991 without saying anything about it at all. There are three good reasons why Congress had not to amend E3A in 1991. The first is, in 1964, that is when E3A was originally drafted. It was part of the original bill. Five years later in 1969 in Sullivan versus Little Honey Park, this court held that 42 U.S.C. 1982 included retaliation. So in 1991, Congress knew that retaliation was encompassed within discrimination. Point number two, there are two reasons why it was not included in E3A. Why did they include it in a separate section? If they knew that, why didn't they have a separate section on retaliation? Well, when Congress added E2M, Justice Scalia, it supplemented the Act. It created a new provision altogether. I understand that. Why did they do it if they knew it was already included? Well, they didn't have to amend E3A because there were policy — the Burlington Northern case, for example, where this court held that retaliation is considerably broader, that provision, where the court held that retaliation in Burlington actually went beyond conditions in the workplace. That was the second reason. And the third reason is, imagine if they had amended E3A or if they had deleted or repealed it. We'd be here saying, well, why did they do that if they already knew in Sullivan since 1964, why would they amend the Act? E2M, on its text, applies to E3A. Congress could have very well put an E2M under this section. It could have very well put an E2M in individuals' race, color, religion, sex, national origin. But what it did was it said a complaining party must demonstrate, and then it lists those things. And then it says, for any employment practice. E3A specifically defines retaliation as an unlawful employment practice. So the text of E2M, which again was a new provision altogether, Congress did not go in and amend E2A through E2D as it easily could have done, but it created a new provision. The motivating factor for the statute of limitations is the fact that it's a new provision. Alito, there's no reason why Congress might have wanted to have a different standard for substantive discrimination and retaliation. Would you disagree with the proposition that the motivating factor analysis creates special problems in the retaliation context? Not at all, Your Honor, and this is the reason, and this Court needs to keep this in mind. Motivating factor causation is not going away no matter what this Court holds today. It's in E2M. It's going to apply to substantive discrimination. With respect to how it's submitted, it's not going to go away. Let me give you this example, this hypothetical. An employee thinks that he's about to be fired. And let's suppose that the employer really has a good, nondiscriminatory reason for firing the employee. On the eve of that, the employee makes a spurious charge of discrimination and does it in a way to maximize the embarrassment to the employer. Then the employer formally makes the decision to terminate the employee. And what the employer says at that time is, we were going to fire so-and-so anyway for all these other reasons, but now, because he's done this and really embarrassed us publicly, we're really happy that we're going to fire him. Now, how does that work out under the motivating factor analysis? Very easily, because in that situation, the employer wouldn't even have to approve the affirmative defense because the employee wouldn't be able to prove a violation of the Act because it was a spurious claim. That's point number one. But point number two. Is that correct? Can't you succeed on a retaliation claim if your underlying substantive claim is invalid? You cannot prevail on a retaliation claim under E2M without proving first a violation of the Act. And that is the distinction Congress made in E2M for Price Waterhouse, whereas Price Waterhouse held there was no violation as long as the affirmative defense was proven. What Congress did in 1991 was say, once you prove a motivating factor and a violation of the Act, only then do you get to the affirmative defense. Scalia. I really don't understand. I didn't understand the law to be that. You mean if an employee files a discrimination claim and then is fired, let's assume there's no other reason except retaliation. He's fired for filing that claim. He has to prove not only that he was fired in retaliation for filing, but also that his claim was valid. Is that what you're saying? No, no, no. I'm not saying that. I'm not saying that. Oh, I thought that's what you were saying. I thought that's what Justice Alito's question asked. No. What I'm saying is, is that you can look at the jury instructions in this case. You would have to prove that the employer acted in part to retaliate and for the protected activity. In his hypothetical, he did. Justifiable retaliation as far as I'm concerned. I mean, the employer files a frivolous claim to embarrass the employer. He can't erase that from his mind. That's one of the reasons he fired this guy. And you say, oh, if that's one of the reasons, no matter how frivolous or anything else, he's liable under the law. Well, here's our position, Justice Scalia. Our position, number one, is the Court doesn't even get to that issue because the statute applies. If E2M applies, then motivating factor causation applies. If it doesn't apply, if the Court rejects our statutory argument, then by default we're under the Price-Waterhouse framework and motivating factor causation should apply. But to the policy question, Justice Alito, substantive discrimination, the teeth of the Act relies on employees being able to cooperate and be witnesses, that they have the guts to come forward. If you take that protection away, you're taking the teeth out of Title VII. Well, no, I understand that. And it's not a policy question. It's a question of interpreting the statute. But I understood your lead argument in favor of a particular interpretation of the statute to be it can't mean what the Petitioner wants it to mean, what the Petitioner says it means, because that would make no sense. And the point of my question was to explore the possibility that there might be a very good reason why Congress would want a different causation standard for substantive discrimination and retaliation. There is nothing in the legislative history in 1991 that supports that. In fact, I would argue the contrary. When Congress passed Section 101 in 1991, which is 42 U.S.C. 1981, in that provision where it overruled Patterson v. McClain and the Court held that retaliation was encompassed within the substantive discrimination provision, which is what the Court held in Seabox v. Humphreys. In the House bill that accompanied the Act, it said that Congress intended for retaliation to apply to Section 101, but it's not in the section at all that became 101 that was in Seabox. In Gomez-Perez v. Potter, as you will know, this Court held the absence of retaliation provision under the Federal sector provision did not undermine the argument that retaliation was included, even though Congress had a separate anti-retaliation provision under the private sector. And there was a very good argument from the Court of Appeals, as you well know, that, hey, if Congress wanted an anti-retaliation provision, why wouldn't they have done so? They did it on the private part, and there were arguments the other way that there was already a civil service remedy in place. And this Court rejected that argument, relied on Sullivan, Jackson v. Birmingham, and those trillion cases. Over a powerful dissent. But I would just like to get to what I think is one of their arguments, and I'm not having some — the argument is purely linguistic, all right? And they say, read M. M says, Race is a motivating factor in an unfair employment situation. Now we look to what the unfair employment situation is at the beginning of unfair employment practice. It is to dismiss a person because of race. All right? Obviously it applies. Now we look to the definition that we're issuing here. It says it's an unfair labor practice to dismiss a person because of retaliation. Now, retaliation for what? For race, that's true. But we couldn't care less about whether that race is part or a little bit or a small bit, could even be totally unjustified. What we're interested in is the retaliation. So they say, you see, the words of M do not speak about race. They speak about retaliation. They speak about race. So whatever the policy reasons are, you can't do it any more than if you have a statute that refers to carrots and you try to put in a beet. You just can't do it. Now, that's the answer I would like to hear in answer. Yes, sir, Your Honor. I think the point is, is that complaining about race is race discrimination. The Court held that in Sullivan. Complaining about gender discrimination is gender discrimination, Jackson v. Birmingham. Complaining about the court held that in Sullivan. So you have to say retribution for race is race. Yes. Now, what I was looking for, perhaps without success, is some other example that has nothing to do with retribution, but where that's clearly so. That's why the example came into my mind, that it is possible that you could, under the basic unfair employment section, find a person liable of race discrimination even though that person himself was not motivated by race, but perhaps had an obligation to report a race discrimination, which he failed to do because he wanted to go to the racetrack. You see, I'm looking for some other — is there any other example in the history of these statutes where we've said, you, Mr. Jones or Ms. Smith, you are guilty of race discrimination? Even though that's because of your responsibilities, because of what you did or didn't do, it's not because you yourself held the motive, but you would attribute the motive to that for reasons to do with the statute. Is there — does that ring any bell at all? If I understand your question, what I would default to are the three or four cases that I mentioned, Sullivan, Jackson v. Birmingham, Seabox v. Humphrey, Gomez-Perez v. Potter, where this Court has consistently held that complaining about discrimination is intentional discrimination. And I want to — All right. I have — But not under this statute. What I'm concerned about is the text of the statute, which simply destroys your argument that there's no difference between retaliation and race discrimination. Section 2000E5G2A limits remedies where a defendant acted — and this is a quote from the statute — for any reason other than discrimination on account of race, color, religion, sex, or national origin, or in violation of Section 2000E3A of this title. It separates out 2000E3A, retaliation, from the other aspects of race, color, religion, sex, or national origin discrimination. Justice Scalia, that's incorrect, and this is why. And this is — this is exactly my point. 5G2A, the text of that, that was drafted by the 1964 Congress. That was a part of the original bill. Five years after that text came through, this Court held in Sullivan v. Little-Hunting Park that retaliation encompasses discrimination. So why in 1991 would Congress go amend 5G2A from 1964 when it already knew? Sir, the statute says what it says. It doesn't matter when Congress put it in there. The statute has to be read as a whole. And if you read it as a whole, this provision clearly separates out retaliation from race discrimination. Period. I mean, it doesn't — I don't have to psychoanalyze Congress and say, did they really mean it, or blah, blah, blah. It's there in the statute. They didn't take it out. The statute still makes a clear distinction between the two. Justice Scalia, respectfully, that argument is directly contrary to Seabox v. Humphreys, and it's directly contrary to Gomez-Perez, where this Court held that Congress is charged with knowing what this Court is deciding prior to acting. But it would have been so easy. It's a set, race, color, religion, sex, or national origin. And why would they leave it out? Why would they leave 5G2A out? Why would they leave or in violation of section 2000e3a? Here's my response to that. I know your argument is, well, look, the Court's already said, well, that's included. But they've got two provisions fairly close to each other, and I don't know if they're running through the usual list why they wouldn't have just run through the list as it appeared in G2A. Well, this is really important. The word retaliation is nowhere in Title VII at all. That's point number one. Point number two is, it — Congress could have specifically put in there an individual's race, color, religion, sex, or national origin, and clearly that would have been anchored to E2A to E2D. Instead, it created a different provision altogether in E2M and specifically said a complaining party demonstrates. And it didn't say under this section. And it defines any unlawful employment practice, any. And then if you look at E3A, it specifically defines what we refer to as retaliation, albeit Title VII doesn't use that word, as an unlawful employment practice. Now, I want to make this really clear, because the government is not making this argument. If you reject our statutory argument, if you reject that argument and you find that E2M does not govern E3A, although we strongly urge the Court to embrace that argument as the Solicitor General has done as well, but if you reject that argument, by default, we are under Price Waterhouse. Juries have been instructed since jury trials started in 1991 under a Price Waterhouse framework in retaliation cases. And this argument about unwarranted retaliation claims, this is the way we've been doing it since 1991. This isn't something new. Juries have been instructed this way since 91. So this idea about creating new jurisprudence, this is a huge step backwards from the framework we've been working under. Ginsburg. But your alternate argument would involve two standards, the one that Congress provided for substantive discrimination, the improvement on Price Waterhouse, and then for retaliation, Price Waterhouse. And I started this argument by asking, is there, in the realm of anti-discrimination laws, any example where you have the substantive charge governed by one standard and retaliation by another? No, ma'am. And you brought up a great point. I am aware, true to Justice Kagan's point earlier, I'm aware of nowhere in American history of Congress ever creating two causation standards for retaliation discrimination, especially under the same statute. It might be a good idea, though, and if so, Congress can do it, right? Well, that would mean the issue is whether this statute does it or not. The fact that nobody has ever done it before, what difference does that make? Well, I think the Court has to interpret the act, but going back to Judge Ginsburg. Kennedy, do you agree with the government's position that the limited affirmative defense provisions Congress enacted, that is to say, limited damages when there's multiple or mixed motives, would also apply to retaliation cases? Absolutely. If this Court embraces our argument, 5G2B would apply to retaliation. But I want to bring up, this is really important, Judge Ginsburg brought up a great point, Justice Ginsburg. If you do the fallback to Price Waterhouse, it doesn't create two causation standards. The juries are going to be instructed the same way. The only thing that's going to happen is if they approve the affirmative defense, it's a complete bar. Whereas, if you're under the E2M amendment, it goes to the remedy. But that is an issue at the time of judgment. So, no, there won't be two causation standards under Title VII. Price Waterhouse is a little different from subsection M, though, isn't it? You have to have proof of you have to have direct evidence of a substantial direct and substantial evidence before you get into Price Waterhouse, right? You don't need that under subsection M. I don't have an answer for that. The answer is I do not know. My belief is that E2M and 5G2B, the distinction E2M makes is that the E2M and 5G2B makes is that it makes it a violation of the Act to prove an illegal motive. Whereas, in Price Waterhouse, you haven't violated the Act at all until the affirmative defense is disproved. So that is the distinction with E2M. 5G2B just goes to the remedy, whereas the affirmative defense from Price Waterhouse was a complete bar. So my point is, is that even if the Court by default finds that E2M does not apply, you're not changing or creating two standards. All that's going to happen is that if the affirmative defense is prevailed upon under the default Price Waterhouse standard, it's a complete bar, whereas 5G2B limits the remedy. So that's the only distinction. Alitoso, isn't it the case that Justice O'Connor's opinion in Price Waterhouse required direct evidence and substantial evidence before there was a shift in the burden of proof? I think Justice O'Connor in her concurrence did say direct evidence under Price Waterhouse, albeit six judges agreed in 1989 that motivating factor causation applies. The — I guess the last point that I want to make is this Court really needs to consider this record on its face.  Dr. Nassar, after going through months of discrimination, finally reports it and he's leaving. In this record, Dr. Fitts admitted to Dr. Kizer, Dr. Kizer, a white Baptist supervisor to Dr. Nassar, goes and reports it. Thank you, counsel. Sorry. Thank you for your time. Ms. Sherry. Mr. Chief Justice, and may it please the Court, I want to start, Justice Alito, with your question as to why it would make sense or why it might make sense for Congress to adopt a different causation standard with respect to substantive discrimination on the one hand and retaliation on the other. And what that question reveals is what, Justice Kagan, you had mentioned. There is not a single statute that Petitioner can point to and not a single statute that I am aware of where Congress has ever expressly adopted two different causation standards with respect to intentional discrimination under the same statute. But I thought the thrust of Justice Alito's question was that retaliation claims are now quite common, and they can almost be used as a defensive mechanism, as a defense when you know you're about to be hired. And if that's true, shouldn't we be very careful about the causation standard? And on that so that was the thrust of his question. And I want to address that because I don't think that's quite right. You can't just scream discrimination when you're, you know, when the writing is on the wall and you know you're going to get fired. As this Court recognized in Clark County, the courts of appeals have uniformly in opposition cases required there to be a reasonable good faith belief that the discrimination actually occurs. So if we're talking about truly frivolous claims, I know I'm going to get fired, you know, I might as well say my boss is, you know, sexually harassing me, that's not going to happen. Those cases are going to be weeded out. The other point I would make. Roberts Where are they going to be weeded out, on summary judgment or after trial? At summary judgment, and they are weeded out at summary judgment. In cases, there needs to be a protected activity, and it's not a protected activity if your claim of discrimination, you don't have a reasonable belief in that claim. Again, you can't scream discrimination as they're kicking you out the door. The other point I would make. That's a fair point, but let's, if we change it a little bit so that it's not frivolous, but it is clearly groundless once it's examined, then you still have the problem. And then I don't think it is as severe of a problem as Your Honor is suggesting for a couple of different reasons. Number one, if you're positing a situation where there's clear evidence that the employer would have made the same decision regardless, that is a defense that is available to the employer, and there's no reason they couldn't seek partial summary judgment with respect to that. That severely limits the remedies that are available. Scalia Excuse me, I don't understand. Say it again. In circumstances where the employer would have made the same decision even without the improper motive, that is a defense under G2B, and it's something that the employer could certainly raise on partial summary judgment that would severely limit the remedies available. The other point I would make is it does still need to be a motivating factor. It needs to actually play a role in the employment decision. So that is the standard, and it's a standard that, you know, that Congress has adopted clearly with respect to substantive discrimination claims. And if I could turn now to the language of the statute, because that is our primary argument. If you look at the language. Roberts Just before you do that, because I understood we're talking about what possible reason there could be for drawing this distinction, it seems to me that the Protection Against Discrimination, Race, Color, Religion, Sex, that sets forth the basic principle of fair and equal treatment. The anti-retaliation provision is more functional. The way you protect against that discrimination is you make sure people don't retaliate when they complain about it. Now, that seems to me to be an order of hierarchy removed from the basic principle. So perhaps you would have a different standard of causation when you deal with that. And I don't think it is for the reasons that this Court talked about in Burlington, Northern, and in Thompson, and in Crawford. And what the Court said in those cases is that the two are linked together. So you do need to have robust retaliation protections in order to ensure that that primary purpose, that discrimination, is outside of the workplace. And so if employees are worried or afraid to come forward and report discrimination, the discrimination is going to persist. It's not going to be remedied. And so the two are linked together, and it makes sense to have the same. Roberts That was my point, that they are linked together, but they're at different levels. I mean, you protect against retaliation so that the protection against race, color, nationality can be vindicated. And I agree with Your Honor. I think that is the reason you protect against retaliation. And in order to have sufficient protection so that interest can be vindicated, individual employees need to feel comfortable coming forward. And you have a the problem is this. It's one thing to say, and it's a good thing to say to employers. When you're making employment decisions, you take race out of your mind, take gender out of your mind, take national origin out of your mind. It's not something you can even think about. But when you're talking about retaliation, and you're talking about an employer who's been perhaps publicly charged with discrimination, and the employer knows that the charge is not a good charge, it's pretty — it's very, very difficult to say to that employer and very difficult for the employer to say, I'm going to take this completely out of my mind. I'm not even going to think about the fact that I have been wrongfully charged with discrimination. Isn't that a real difference? I don't think it is, and I think it's significant if we're talking about distinguishing between retaliation. It's significant that Congress in a number of whistleblower statutes, so specifically retaliation statutes, has adopted a contributing factor, a motivating factor standard, and in fact has adopted a same-decision defense where you need clear and convincing evidence. So I think Congress's judgment is that that distinction is not one that should be made, that it is — Scalia, you know, you talk about Congress as though it's a continuing body out there, the same people, and would the same people that did this do that. They're not the same people. I don't know what Congress it was that passed this particular Act versus other anti-discrimination Acts. Some of them may have been Democratic Congresses and others may have been Republican Congresses. To assume that there's one Congress out there that has to operate logically in all these areas, it seems to me unrealistic. And the best thing we can be guided by is simply the text that Congress adopted, however the makeup of that Congress happened to be. And thank you, Justice Scalia. I'm actually happy to turn to the text. I think it's important to look at the language of subsection M, and that's on page 15A of our brief. And if you follow that language, it starts off very plainly saying, As except as otherwise provided in the subchapter, an unlawful employment practice is established. This is a means of proving an unlawful employment practice. And we know when you look at 3A, which is on page 17A of our brief, that retaliation is an unlawful employment practice. Congress used that phrase, unlawful employment practice, in subsection M. It is an unadorned phrase. It didn't limit it. It didn't say under the section. It didn't say under section 2008-2A. It said an unlawful employment practice. And if you continue on, when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor, and we know under this Court's cases, under Gomez, Perez, under Seebox, under Jackson, and under Sullivan, that race is a motivating factor in an employment decision that is based on retaliation when you've complained about race discrimination. And so the language of M, the plain language, clearly encompasses the retaliation claims in Title VII. And so the only argument I believe that Petitioner is making is that there are things elsewhere in the statute that might make you think otherwise here. And we would argue that none of them are. Kennedy, under that analysis, you don't need the final clause on page 17A of your brief of III because he is opposed. Race is a no? I think that defines what the protected activity is. I don't think it is any different than in Jackson or Gomez-Perez. In those cases, it was a general discrimination provision, but once retaliation claims are recognized, there still actually needs to be protected activity. There has to be opposition. There has to be participation of some sort. And so I don't think it's any different in that respect. Justice Scalia, you were talking about G2A, and if I could just take a moment on that, because that is one of the arguments that Petitioner is making. My colleague made the point that it was adopted by the 1964 Congress. It was adopted before Sullivan. And so if I could focus on the 1991 Congress that enacted both subsection M and subsection G2B, that Congress was acting in light of Sullivan. And we know it was legislating with full knowledge of Sullivan because that's exactly what this Court said in CBOX. CBOX involved section 101, rather, of the 1991 Act. This involved section 107 of the 1991 Act. So we know that when Congress was writing M and when it was writing G2B, it knew because of Sullivan that it didn't need extra words. It didn't need redundant words. It didn't have to say under section 2000e-2 and section 2000e-3. It could simply say exactly what it said in M, and that would do the trick. And it's a common rule of statutory interpretation that you don't add extra words if you don't need them. And so what Congress did in M is it adopted exactly what words it needed to effectuate its purpose, which is to have one causation standard, a motivating factor standard, available with respect to all intentional discrimination claims under the statute. Scalia. Scalia. The maxim that you don't add words where you don't need them doesn't help your case. It hurts your case. Because in the other provision that was carried over from the prior law, you were making a nullity of the addition after referring to discrimination on the basis of race, of, you know, retaliation. Your Honor, may I? To answer that question, what happened in 1991, Congress didn't add that language. It didn't amend that language. It simply didn't delete it. And I think it's completely reasonable when Congress is faced with the choice of deleting language that had been there for 25 years, that wasn't a problem, it just said worse, it was redundant, chose to leave it in place lest any negative inference arise from the deletion and simply legislate prospectively in subsection M in G2B based on the new understanding that the Court adopted in Sullivan. Roberts. Thank you, counsel. Mr. Josepher, you have 3 minutes remaining. Thank you. This case seems to boil down to two very simple legislative drafting rules or interpretive principles. The first is, from Gross, we know that Congress doesn't relieve the plaintiff of the traditional burden of proof unless it specifically indicates so. And so then we talk to subsection M where the relevant bases are the litany of race, color, sex, religion, and national origin. So the second interpretive principle is then, does that litany here encompass complaining about unlawful conduct and participating in an investigation, which are the protected conduct for purposes of retaliation? That principle comes straight out of Jackson and Gomez-Perez, that when Congress broadly refers to discrimination on the basis of race in the statute without greater specificity, the Court will read retaliation in. When Congress breaks it out, the surplusage canon, and I agree with Justice Scalia, I really didn't understand why they were talking about that, and also the general canon, it's the same canon, which is put differently, is that specific provisions control over general ones and are not subsumed within them. That tells us that when Congress is speaking more specifically, it's speaking more specifically. Here, that tells Congress very clearly how to amend these statutes when it wishes to, which it does all the time, and how the courts and how lower courts should construe them. In addition, Title VII as a whole is especially clear, because the same subsection II within Title VII, when it wants to refer to all types of employment discrimination, it will say a claim of employment discrimination. And by the way, the 1991 Congress put that provision in there. So this Congress knew how to say any claim of employment discrimination, because it did so in subsection N, which comes right after this one. Congress will also say an unlawful employment practice when it's referring to all of them. But when it wants to specifically refer to one subset or another, it does so. That's a clear, logical, coherent reading of the statute as a whole that every court of appeals to consider the question has adopted. They're asking you to read various statutory provisions to be surplusage, and there's simply no reason to do so, especially because, looking just at 1991, Congress at that point was not saying, oh, in light of Jackson, we can now just speak more generally, because it specifically, in 1991, cross-referenced the anti-retaliation provision of Title VII when it wanted to, and it specifically used broader phrases like a claim of employment discrimination when it wanted to. And especially since the whole point of gross, or much of the point of gross, was to make it as clear and straightforward, you've done that. And the question now is whether to retreat back into a jurisprudential morass where, within the very same statute, the drafting rules this Court has otherwise articulated no longer apply. The final point I'd make is that, you know, there's this question about are we treating, you know, retaliation and substantive discrimination differently within one statute, and the answer is, well, yes, as Congress did. The other way of looking at it is they want to treat retaliation differently in this statute than it's treated in every other statute. You can point to similar anomalies across the board, the reason being that Congress has chosen to have two different sections within this area.  Roberts.